### APPLEBY v. SEWARDS et al.

(Supreme Court, Appellate Division, Second Department.   March 20, 1900.)

1. MORTGAGES—ADVANCE OF CONSIDERATION—EVIDENCE.

Defendant executed a mortgage to plaintiff to secure sums to be advanced to him by plaintiff.  Subsequently plaintiff assigned to defendant two mortgages, which had been in the hands of plaintiff's attorney, who claimed to have a lien on them for claims against plaintiff.  Defendant collected the total amount of the mortgages, and agreed with plaintiff's attorney to pay his claims out of the proceeds, and apply the remainder on the sum to be advanced by plaintiff.  Instead of doing so, defendant deposited the total amount to his personal account, and paid nothing to plaintiff's attorney.  Plaintiff testified that he owed the attorney nothing, and that his intention was that the full amount collected on the mortgages should be applied as an advance to defendant; and it appeared that plaintiff would have derived no benefit by assigning the mortgages, unless the full value thereof was so applied.  *Held*, that a finding that the total amount collected by defendant was chargeable as an advance on the sum secured by the mortgage executed by him would not be disturbed on appeal.

2. SAME—RECEIPT OF ADVANCES—EVIDENCE—HUSBAND AND WIFE.

Where an agreement executed contemporaneously with a mortgage by a husband and wife of the wife's property recited the mortgage was made to secure sums to be advanced to the mortgagors, whose liability should extend only to the amount of the principal they should receive from and receipt for to the plaintiff, and where the wife took no active part in the matter, except to execute the papers, the absence of a receipt by her could not be urged as a defense to the collection of money actually advanced to the husband on the mortgage, and evidenced by the assignment to him of securities on which the money was realized.

Appeal from special term.

Action by Lorimer G. Appleby, trustee, etc., against Sophia Sewards and others.  From a judgment in favor of plaintiff, defendants appeal.  Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Charles J. Patterson, for appellants.

Paul R. Towne, for respondent.

HIRSCHBERG, J.   The defendants Samuel D. Sewards and Sophia Sewards, his wife, executed their joint and several bond to the plaintiff, as trustee, on the 5th day of August, 1896, to secure the sum of $18,000 and interest, which bond was accompanied by their mortgage as collateral security covering certain real estate in the city of New York belonging to Mrs. Sewards.   On the same day the parties entered into a written agreement reciting the giving of the bond and mortgage, and the fact that all of the $18,000 had not been paid, but providing that the same would be paid gradually in such sums as should come to the plaintiff's hands as trustee, and that the liability of the defendants should extend only to the amount of the principal which they should actually receive from and receipt for to the plaintiff, with interest only on the amount and from the time of such payment and receipt.   At the time of the execution of these papers, two bonds and mortgages belonging

to the plaintiff as trustee, and covering real estate in New Jersey, were in possession of the plaintiff's attorney, a Mr. Miller. On said 5th day of August, 1896, the plaintiff executed blank assignments of these bonds and mortgages, which he also left with Mr. Miller, and they were shortly afterwards delivered, with the securities, to the defendant Samuel Sewards by Mr. Miller, with Mr. Sewards' name inserted in the assignments as assignee. Mr. Miller acted as attorney for the plaintiff in the matter of the $18,000 mortgage transaction, but it does not appear whether he acted as attorney for the mortgagors. The defendant Mr. Sewards is a lawyer. Mr. Sewards collected the money on the two New Jersey bonds and mortgages, amounting to $6,200; all but $1,000 of it shortly after receiving the assignments, and the $1,000 the following year. This money has been retained by him, and the sole question litigated on the trial was whether the amount so received by him is chargeable as an advance on account of the money secured by the $18,000 bond and mortgage under the terms of the contemporaneous agreement. The learned trial court found the fact in favor of the plaintiff, and there was sufficient evidence to justify the finding.

As to the main fact, viz. that the transaction in respect to the transfer of the two New Jersey mortgages was with the view of their application in whole or in part towards the $18,000 mortgage, there was no dispute between the parties; the contention on the part of the plaintiff being that the two mortgages were taken as $6,200 advanced upon the $18,000 mortgage, while the defendants contended that only the balance of that sum was to be applied after deducting an alleged lien of $900 in favor of Mr. Miller, and also a charge for Mr. Sewards' services in getting the mortgage cashed. The plaintiff testified that he never personally dealt with Mr. Sewards, that the transaction was all conducted by Mr. Miller, and that the $6,200 mortgages "were taken up in the Sewards mortgage." He denied that Mr. Miller had ever advanced him any money, or that he was indebted to Mr. Miller at all at the time of the transaction, and alleged that the New Jersey mortgages were in Mr. Miller's hands at the time of the execution of the assignments, for the sole purpose of the collection of the interest. On the face of the transaction, and unless his testimony has been successfully overcome by the defense, the plaintiff has established that the money in the defendants' hands has been received and retained as part of the consideration of the $18,000 mortgage. Mr. Miller, however, was examined as a witness on behalf of the defense, and he testified that he advanced $100 to the plaintiff on account of these New Jersey mortgages on the 5th day of August, 1896, that his whole claim, including prior advances, then amounted to $900, and that an arrangement was made between him and the plaintiff to the effect that he (Miller) was to get the mortgages converted into cash, if possible, and adjust his lien for the moneys advanced, and that whatever balance there was, with certain moneys which the plaintiff was to obtain, was "to be taken to advance for the mortgage of Sewards." He further testified that he told Mr. Sewards of this arrangement, and that Mr. Sewards said, referring to the two mort-

gages, "he thought he would be able to sell them. If he could, he would account to me, and would pay my amount, and a receipt would be given for whatever there was over and above. I told him that whatever trouble he was put to we would make right. There was no specific agreement as to amount." Mr. Miller admitted that the mortgages were perfectly good, the interest paid promptly, and that he could have collected them himself by foreclosure; but he did not claim any express authority from the plaintiff to employ Mr. Sewards in that behalf, or to agree to compensate him for his services. Mr. Sewards testified that Mr. Miller told him that he was a creditor of the plaintiff to the extent of a little over $900, and "that he would expect his money out of the proceeds of those two mortgages." Mr. Sewards, as has been seen, collected the money, deposited it in his own personal account, and not as moneys collected for a client, and never, during the two years intervening between the collection and the commencement of this action, adjusted his account with Mr. Miller. His explanation why he thus retained all the money collected is not satisfactory. He says, in effect, that he reported to Mr. Miller; that Mr. Miller said he should leave the thing for the present; that there was some dispute between the plaintiff and his co-trustee; that he (Mr. Miller) would not want to do anything in the matter, one way or the other, until the whole amount of $18,000 was on hand; that he (Sewards) went to Europe, leaving a power of attorney with his son to carry on the transaction with Mr. Miller; and that when he returned he was informed that Mr. Appleby and Mr. Miller had had some falling out, and nothing was done. It is a significant fact that no part of this explanation was corroborated by Mr. Miller. It further appears in the evidence that the $18,000 mortgage was to be a first mortgage, and that Mr. Miller promised the plaintiff he would see that it was. It also appears that Mr. Sewards agreed to make this a first mortgage, and Mr. Miller testified that he never called upon Mr. Sewards to perform his agreement in that respect. As a matter of fact, the mortgage appears to be subject to prior incumbrances amounting to $19,500.

In this transaction it is evident that the plaintiff was to derive no appreciable benefit unless the New Jersey mortgages were to be turned into the $18,000 mortgage at their full value. As appears by the written agreement, the object on his part was to secure investments for the estate which he represents. To the extent of these two New Jersey mortgages he already had such investments, and they were perfectly good, as the issue shows, and the transfer of these securities to the $18,000 mortgage must have been chiefly, if not solely, for the benefit and accommodation of the defendants. Assuming that Miller, by virtue of his relation to the plaintiff, was vested with implied authority to employ the defendant Sewards to act as attorney for the latter in securing such a transfer, good faith at least required that the plaintiff should have been informed that his prospective debtor was to act as his attorney in the transaction by which the debt was to be created. In view of the peculiar surroundings of the transaction, the absence of express authority on

the part of Mr. Miller to employ Mr. Sewards as the plaintiff's at-
torney, and to agree to pay him compensation for obtaining the cash
to be applied on the $18,000 mortgage, the failure to disclose to the
client the fact of such employment, the unsatisfactory nature of the
disputed claim for a lien upon the mortgages on the part of Mr.
Miller, the unquestioned fact that the plaintiff has parted with the
New Jersey mortgages, while the defendants have had the money
for more than two years, and the insignificant benefit, if any, to
inure to the plaintiff on any other theory than that which he ad-
vances, it cannot be said that the unqualified testimony of the plain-
tiff to the effect that the mortgages were transferred as advance-
ments without any deductions or offsets has been so far overborne
as to preclude the trial court from believing and adopting it.

It was urged on the argument that the provision in the agree-
ment requiring a receipt to be given as evidence of the amount
advanced upon the $18,000 mortgage was for Mrs. Sewards' protec-
tion, and that her property could not be bound without some proof
of payment to her, or to her husband with her knowledge. This
claim is without force. The transaction was all consummated
through Mr. Miller acting with her husband, and it does not appear
that she personally did anything, except to execute the papers.
The provision as to the receipt was for the protection of all, so
that some written evidence might exist of the amount advanced.
Where bonds and mortgages are taken on account, they and the
assignments would furnish evidence quite equal to that of a receipt.
Mrs. Sewards was examined as a witness upon the trial, and con-
fined her testimony to two points: First, that she had never re-
ceived any money upon the bond and mortgage; and, second, that
she had never said anything to her husband about taking anything
else but money upon the bond and mortgage. She did not deny
that he had said anything to her about it, nor did she deny knowl-
edge of the transactions in question, or assert that they were with-
out her consent and authority. So far as she was concerned, her
defense was based upon the assumption that the New Jersey bonds
and mortgages were taken to be applied upon the $18,000 mort-
gage, the amount only being a subject of dispute. Under the
circumstances it seems clear that the mortgagors are not in a posi-
tion to assert the mere absence of a receipt as a defense to the col
lection of whatever money has been actually and in good faith ad-
vanced to either of them upon the bond and mortgage in question.
It follows that, in the absence of errors in rulings upon the trial
which affect the result, the judgment should be affirmed.

Judgment affirmed, with costs. All concur.